I would like to reserve two minutes for rebuttal if we need it. It may not get there. This is a pretty simple case. It was a valid plea. Mr. Ford was a felon in possession of a firearm. He's criminal history category 6. He was not in immediate contact with the firearm when he was arrested, but ultimately he pled guilty to actually being in actual possession. This issue here, the only issue that I see in the case is application of guideline 2K2.1 with a pretty simple syllogism. I think it goes like this. Ford is subject to enhancement if there's an underlying state felony. Second premise, the facts demonstrate the violation of Tennessee aggravated assault, and if those two premises are true, then Ford is subject to the four-point enhancement. The problem is with that Tennessee aggravated assault, under Tennessee law 3913101A2, he has to have caused another to reasonably fear imminent bodily injury, and the trial court here engages in some supposition. There's simply no evidence. The officer who testified had not interviewed the lady who he had supposedly pointed this gun at or had shown the gun. We have just a variety of facts that don't line up, but to the extent of he was looking for this lady's son a day earlier, and she saw that he had a gun. That's all that we really know. The court, he did come to her house, point the gun at her, and make some requests. Now granted he in one sense wasn't making them directly of her, but he was looking for the son, right? Well, I'm not sure that he pointed it at her. It says he threatened her with a firearm. That's the pre-sentence investigation. That is subject to many things. Where I come from, everybody carries guns, so what is the point of threatening? But for these purposes, if it really was a threat, then that gets us over that aspect. You're focusing on reasonably fear imminent bodily injury. If she's only a courier for the message, then maybe she wouldn't have feared it. Yes, sir. There's no evidence that she was placed in fear for herself personally. Merely coming into contact with somebody who says, I'm looking for your son. I'm going to shoot him and have a gun, doesn't mean that she would reasonably be fearful. The trial court just supposed that to be true, and they enter into this discussion about witnesses being threatened, but without any real relation to Mr. Ford's case. Under Tennessee law, is attempting to intimidate a witness also a felony? It is only if you have a firearm. So the assault itself is the attack. But in this case, he does have a firearm. Yes, sir. Counsel, let me ask you this. The information that the district judge had, in which he based his conclusion that there was another crime committed, nobody testified. All that information was second hand to him. Yes, sir. Is that fair to say? Yes, sir. The officer who did testify had not And another officer told him what she said. Yes, sir. Right? Yes, sir. So we've got inference upon inference here, and we don't know what the underlying facts are, and I think under those circumstances it's improper to suppose your way into the four-point enhancement. Under our, I mean, a sentencing is not a trial, so it's not hearsay. Yes, sir. Impermissible here. So the evidence comes in, the question is just how good is the evidence? Correct. And what's our standard? Preponderance of the evidence and clear error? I think it's clear error, your honor. And I think, I just think that there's, without anything, it has to be clear error. There's no basis on which to have made a finding for the trial court to have made that finding, therefore the trial court was in error in making that finding. If you're correct then, what is the remedy? To remand for resentencing? I'm afraid so, yes, your honor. And on the remand, what would be open? That is essentially what we had, if you think of it as a civil sort of case, you're sending it back for a new trial, can the government, you know, find Ms. Billups now and bring her in? I don't know, your honor. I would think that because it is, because the sentencing has effectively not happened upon the remand. You're sort of restarting the clock. I would think so, yes, sir. Now, of course, I don't think he can vacate his plea. What, at the bottom of this case, is really the quality of evidence necessary to justify adding, each level is what, 8 months, roughly? Well, your honor, the four points takes him from 110 to 137 months down to 77 to 96 months, so it's a change. To another 5 years? About 3, yes. So is this evidence sufficient to justify adding 5 years to his sentence? That is the question, yes, your honor. That's the basic question. What's the quality of the evidence? Pretty attenuated evidence, isn't it? Extreme. To add 5 years? Extremely, and it just doesn't address those elements of the Tennessee statute. They just seem to have assumed the violation of the Tennessee statute without anybody maybe looking at it. Can you give me those numbers again? Was it 110 to 137? Yes, sir, 110 to 137 was his basis. He's a criminal history category 6. And you say it would take it down to 77 to 96, so it's about 3 years, right? About 37, 40 months. Well, 3 years, 5 years, it's a hell of a long time. Yes, your honor. Now, he did run into the statutory cap of 120 months, and that's what he ended up getting. So it takes it from 120 months down to possibly 96. Well, I suppose on remand they could bring the woman in. Yes, sir. I think, and they, I wouldn't see a problem with that, because at least then they could address this issue of whether she might testify in your favor, and you can cross-examine her and so on. Yes, your honor, that wouldn't be me. Okay, I mean, sorry, in the defendant's favor. Does the case law say if the judge screws up and goes to the court of appeals, he gets a second chance to justify a conclusion he came to in the first place that wasn't found, Sam? Or does the judge, does he get one chance? I don't know that the procedure would put him in jeopardy of saying with only one chance, your honor. I don't, I would love to say, yes, he has to go to the bottom range of the guidelines at 97 months, or 77 months, but I don't have Usually a remand is an open resentencing unless we limit it for a particular reason where we say, you know, there's some error of law that you have to correct. Yes, your honor, and I don't know. There are cases from a few years ago about, you know, general remand versus limited remand, I think. Your honor, the only ones I've been involved in have been general remand, so I'm not aware of that. Okay, anything else? Any other questions, colleagues? Thank you. Thank you, your honor. Good morning. I'm Chris Poole from the U.S. Attorney's Office in Chattanooga. First, I think, just for the math, I think it's a two-year difference at the top of the guidelines from 96 months to 120 months, but more importantly, the testimony was that the defendant pulled a black pistol, and I'm quoting, it's pages 110 to 112 from the transcript, pulled a black pistol on her, asked her where her son was, and said the son would know why he was there. She called the police because of this, and then a block and a half away, a couple hours later, they find him with what the court determined to be the same gun. It was the same inscription, obviously very close, temporarily, and in proximity. Pulled a pistol on her. Chattanooga means they pointed it at you. It does to me. I don't think he was just showing her that, hey, I have to have one, and if she wasn't scared, I don't see why she calls the police. I think that's indicative of her fear. What do you mean? She says she has to be scared to call the police? Well, I don't know why she would. It's not illegal necessarily. I don't have any idea that she knows his criminal history. She's scared of her son also, isn't she? The guy's walking around with a gun. Looking for her son, absolutely. She's a man with a gun. Excuse me. She's a man with a gun, calls the police, and from that you infer that a crime was committed just by that? When the facts are that he pulled it at her and made demands of her, I do, Your Honor. As pointed out by defense counsel, there are a lot of people in Tennessee walking around carrying guns, and the police are not called every time. First off, I'm not sure where we're going with this argument, but it might well be a crime, just not this particular crime, right? It might also be reckless endangerment. He admits that he's drunk and has a gun. I don't know. We have a crime in Kentucky called terroristic threatening. If somebody pulls a gun and points it at me, I would want to go to the law books and find some crime. But the issue here is imminent bodily injury, isn't it, in order to support what the judge did in this sentencing. Now, something else might happen, but in order to not get a reversal, don't we have to say that there is preponderance of the evidence, that there's not a clear error, that she was in fear of imminent bodily injury? I mean, isn't that the question? You can answer it, but isn't that the question? I will answer it, that I don't think in order to avoid a reversal you have to find that. I do think in order to avoid the application of the four-level enhancement that you have to find that. Judge Collier also pointed out during the sentencing hearing, and it's not been argued this is not a substantially reasonable sentence. That was not brought up by defense counsel that this is not a reasonable sentence. And Judge Collier says, based on the defendant's record and the 3553 factors, that he would have imposed. Wait a minute. I may agree with you on that, but isn't the law pretty clear that if you get the guidelines wrong, you've got to start over? You have to get the guidelines wrong. If the defendant says, this is the worst guy I ever saw, he's got to start with them. That's what the law is. It may not make a lot of sense, but that's what the law is. That's right, sir. But my point is he can still give him the 120 million dollars. Oh, sure. And said that he would. He said on the record that he would. But still, that's not our business. That's his business on remand. Yes, sir. So let's try to focus on your best argument. My best argument is the man pulls a gun on someone, points it at her, and makes demands of her. No, someone said he pulled a gun on someone. Well, yes, sir. You're telling us as if he had actually been charged with this crime and tried. And the evidence presented to the jury was what the judge had in front of him only. He could not have been convicted, could he? No, Your Honor, but we're at sentencing and the case law is clear that the rules of evidence don't apply and that this testimony can be heard and the court can make a determination based on the case agent. You know, I can make the argument that the fact she didn't show up supports the fact that she's afraid. We've made multiple efforts to get her there and the point was he's trying to intimidate a witness and then she's afraid to show up. As I read your footnote, it just said he hadn't been able to contact her. Correct, but there were, I mean, multiple efforts made. If it had been a trial, could we have arrested her and brought her in and made her testify? Yes. Have I done that in a trial situation before? Yes. In a sentencing, I have not because it's not necessarily in the case law. You can subpoena her. I can subpoena her and hope she shows up. You can get an affidavit from her. I can subpoena her and hope that she shows up. Yes, Your Honor. Or you can go and get an affidavit from her. I don't know that I would submit an affidavit, but I guess I could. To your reaction, what did this cost him at a minimum, two years? As I said, Judge Collier has already said that if it comes back, he's going to give him the same sentence, so I don't think it cost him anything. The guidelines. The guidelines, if they were properly calculated, there's a two-year difference at the top of the guidelines, but Judge Collier said, you know, based on the 3553 factors, protection of the public, the fact that he's had a criminal conviction. He's got 23, I believe. Every year of his adult life, he hadn't worked, that he would give him the same sentence. I don't think it cost the defendant anything. I guess if Your Honor finds that he did not apply the guidelines correctly, what it cost is the price of remanding, sending back for him to impose the same sentence, which I understand is the law that we have to accept the guidelines correctly. Does that mean we should send it back to a different judge who could look at this over again? You keep saying that he's going to get the same sentence with that judge no matter what. It sounds like you're saying the judge isn't going to exercise any sentencing discretion when he gets it back. What I'm saying is the judge pointed out that he was exercising his discretion. Well, how does he know what he's going to give the guy some months or years after he gets back to him? Well, he knows the defendant's record, Your Honor. He knows his history. He knows all the 3553 factors, his personal characteristics. He knows all the factors because he considered them and the PSR and all of the sentencing factors, and there's been no argument that he did not properly consider all those factors. Yeah, but the judge doesn't usually say what the sentence is going to be at some time in the future. He might be creating an appealable issue there by saying what the re-sentence is going to be even before he gets to the re-sentencing. I'm just wondering. It sounds like you're making an argument that we should send it back to a different judge. I'm certainly not making that argument, Judge. I don't know that it's that unusual. Certainly before Booker we were kind of in flux, and the judges did it in every case, but I don't think it's that unusual. He's pointing out that under 3553 this is an appropriate and a reasonable sentence, and there's no argument that it has not been an argument made that it's not a reasonable sentence. What he's saying is I'm going to vary it. I would vary it. I would depart upward. Correct. Exactly. If he got the guidelines wrong, then he would vary because of the 3553 factors. That's exactly right, Your Honor. Counsel, just trying to get back to the point about putting in fear that from a factual point of view there's really not an objection to the officer directly testified to what Ms. Billups told him. So other than the hearsay objection, which doesn't matter at sentencing, you have admissible evidence that he pulled the gun. Yes. Okay. Yes. But then you have to get to the second point, and really what you're giving us, and tell me if there's more, is that when somebody pulls a gun on you, you must be in fear of imminent bodily injury. I think that's right in this case. As I said, I think that the fact that she called the police is important. I think it's important that Task Force Officer Nairmore testified that the police responded to, and this was the term, a threats call, and that's in the transcript of why the police were even in the area looking for the defendant. But your other, so the officer who testified about Ms. Billups, which one was that? There was one, Detective Nairmore. He's referred to as Detective. He's also a test. He's the same one. Okay, but he did, you say that the, what, it was the record that said a threat call? Yes. But the threat could easily have been against the son. I guess. And, of course, you could have asked, did she feel threatened and so on. And there was testimony that a rational person would feel anything. But you had the officer there, right? You could have asked him anything. Yes, absolutely. By you, I don't know if it was you personally. It was me. Collectively. Yes, and I think, and the court goes through this discussion at the district court level about a rational person, how they respond to someone pointing a gun at them, someone who has had a gun pulled on them, pointed at them, and demands made of them. And the court, I think, can infer that a rational person would be reasonable to be in fear of bodily injury. There is no other reason for this man, if he's just looking for her son, why not just ask where her son is? There is no other reason to pull a firearm other than to scare that person and say, I need to know this answer. Again, there's a difference between being scared and being in fear of imminent bodily injury. That is, she could be scared, this guy is going to kill my son, right? I mean, that's scary. That may be criminal in itself, but it's not the statute that the judge applied. It's not. If he's just looking for the son, and there's no reason for him to pull the gun on her, I guess is my point. He doesn't need to let her know that I'm going to kill your son. I just need your son. If he's pointing a gun at her, I think it's a reasonable person, a rational person thinks, if I know and I don't tell him, he's going to shoot me. Why else is he pointing a gun at me? Obviously, if he's just looking for the son, if he wants to threaten the son, that's another issue. But when you pull a gun on someone and say, where is your son? I think it's completely reasonable for the court to find, by a preponderance of the evidence, that that person was in imminent fear of bodily injury. Yeah, but we're all assuming all this happened on the basis of double hearsay. We're assuming it happened based on what the court can consider at the district court level that is not disputed, and the court can consider this testimony. Yes, sir. But we're considering, we're talking as if all this happened. Yes, sir. As those are the facts. On an evidentiary basis as fragile, rather fragile. We're considering it on the facts on the record which the court can consider. The only facts in the record at the sentencing hearing which the court can consider at the sentencing level. Yes, sir. And those are my arguments, Your Honor, in the brief. Thank you. Thank you. Roushore, any rebuttal? Thank you, Your Honor. Just two quick issues, Your Honor. The testimony was that we did attempt to contact Ms. Billups in this case yesterday several times. So we're not talking, the fact that someone doesn't immediately return a phone call I don't think is indicative. Okay. So the yesterday is in the sentencing hearing somewhere. I was going from the footnote in the brief. Yes, sir. I think it's page 129. Great. I got it. Thank you. Line 12. Got it. Thank you. And then, second, it's not an objective standard. The question isn't whether a reasonable person would have been in fear. The assault statute shows intentionally and knowingly causes another person. So it's an objective standard. Did that person have fear? Not would some reasonable person reasonably have fear? And those are all I have. Okay. Well, thank you, Mr. Crouchore. We appreciate your taking this case under the Criminal Justice Act. It's a service to our system of justice. The case will be submitted, and the clerk may call the next case.